## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EMILEE W.,

      *Plaintiff,*

 vs.

    Case No. 2:21-cv-02092-EFM

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Emilee W. brings this action seeking review of the final decision by Defendant, the Acting Commissioner of Social Security ("Commissioner") denying her application for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff alleges that the administrative law judge ("ALJ") erred in failing to find that her fibromyalgia and migraine headaches equaled medical listings under step three of the Act's disability analysis. Plaintiff further contends that substantial evidence did not support the ALJ's assessment of her residual functional capacity ("RFC") because the ALJ failed to consider her headaches, poor vision, and ocular migraines in constructing her RFC. Because, however, the Court finds that substantial evidence supports the ALJ's findings as to both the medical listings and Plaintiff's RFC, the ALJ's decision is affirmed.

## I.      Factual and Procedural Background

**A.      Medical history**

Plaintiff is a 32-year-old woman, who worked for many years as a buffet server.  In 2014, Plaintiff was in an automobile accident, after which she began experiencing chronic pain and fibromyalgia.  In 2015, Plaintiff's began declining in other areas as well, with Plaintiff seeking treatment for migraine headaches, blurry vision, and glaucoma.  Plaintiff alleges her onset date of disability as February 28, 2015.  Nevertheless, Plaintiff has continued to perform her daily activities of taking care of her four children, cooking, attending doctors' appointments for herself and her children, shopping, and doing other routine household chores.  She also worked 15 hours a week as a personal care attendant for two and a half years after her alleged onset date.

Although the Plaintiff's medical records are voluminous, the only records at issue here are those dealing with Plaintiff's fibromyalgia, migraines, and vision.  Regarding those ailments, Plaintiff's testimony has consistently differed from the record as a whole.

First, Plaintiff alleges her fibromyalgia has impacted her ability to ambulate effectively, reporting multiple falls and chronic pain when walking.  In 2017, a consultant observed Plaintiff's guarded gait and positive leg lift bilaterally.  Likewise, in 2017, Plaintiff was recorded to have a deviated gait and favored her right side by a physical therapist.  In 2019 a physical therapist observed that Plaintiff's gait was antalgic, with a slightly forward flexed posture and mild lateral trunk sway.  However, Plaintiff did not use any assistive device to ambulate.  Still, after testing her balance, she was categorized as a high fall risk.  At no time during these physical therapy sessions was Plaintiff recommended for crutches or an assistive device.  Rather, the treating medical personnel remained confident that physical therapy would improve Plaintiff's gait and decrease her fall risk.

In contrast to these physical therapy examinations, multiple medical examinations throughout 2018 and 2019 noted that Plaintiff ambulates normally with normal motor strength in the upper and lower extremities. A few examples: an examining physician in 2018, Dr. Cullen, noted that Plaintiff ambulated without an assistive device with a wide-based gait and stable station. Furthermore, although Plaintiff attended the ALJ hearing using crutches, a prescription for which had been entered in 2017, that prescribing doctor specifically noted that crutches were not necessary. But because Plaintiff and her mother "would really like to try the crutches," the doctor wrote the prescription anyway.

In her brief, Plaintiff claims that her fibromyalgia has required several hospitalizations. However, Plaintiff cites to only one document showing visits to an emergency room at Holton Community Hospital on June 19, 2018, and again on August 9, 2018. Each time she was discharged in good condition the same day she arrived, requiring no overnight hospitalization. Neither were any tests or procedures performed. In fact, the only reason for her visit in June was that she was about to run out of her medication and could not see her normal provider to obtain a refill. The only instructions given to Plaintiff for her June 18 visit was to continue taking her medication and contact the pharmacy for a refill, *not* the hospital's emergency room. The August 9 visit has no instructions upon discharge whatever.

Second, Plaintiff has consistently complained of migraines, stating that they have sometimes lasted for up to six months or been so severe that she has had to lie down. There is no other medical evidence cited by Plaintiff in support of these assertions. At the administrative hearing before the ALJ, Plaintiff testified that she suffers "regular migraines" two to three times a week and severe ocular migraines once a month. She even stated that she was suffering a migraine at that very moment. Her responses, however, did not demonstrate any difficulty attending and

responding to questions.  Similarly, at a visit to an examining physician in 2019, Plaintiff complained of suffering from a migraine that had lasted a week.  However, Plaintiff exhibited no signs of severe pain, was well oriented with attention, concentration, and memory functioning normally, and her cardiovascular and respiratory sounds were also normal.

Finally, in 2017 and at the administrative hearing in 2020, Plaintiff complained of issues with her vision such as blurry vision, double vision, and black spots.  The only evidence of Plaintiff's vision issues is her own testimony.  Upon seeing an eye doctor, she was diagnosed with "[m]igraine with aura, not tractable, without status migrainosus."  The only evidence of the severity of these ocular migraines comes from Plaintiff's testimony during the hearing.  There, Plaintiff testified that she experiences a severe ocular migraine once a month which causes her to lose her vision, with residual black spots and floaters lasting for a few hours.  In contrast, a medical opinion by Dr. Brockenbrough in December 2018 stated that Plaintiff had no visual limitations at all.

## B.   Procedural history

The aforementioned administrative hearing took place before the ALJ on January 16, 2020. Three months later, the ALJ issued his decision finding that Plaintiff "has the following severe impairments: fibromyalgia/myalgia; chronic pain syndrome; lumbago with sciatica and sacroiliac disorder; asthma; migraines/occipital neuralgia; vison loss including glaucoma with blurry vision and convergence insufficiency, astigmatism, myopia and dry eyes; and obesity."  In the ALJ's opinion, Plaintiff had "no limitation in understanding, remembering, or applying information; a [sic] no limitation in interacting with others; [and] a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself."

Regarding Plaintiff's headaches, the ALJ concluded:

The exams also do not document any residual neurological or cognitive deficits reasonably consistent with the claimant's allegedly severe migraines. For instance, during one visit where the claimant reported that she was having a migraine that had lasted for an entire week, the exam indicated that she was not in any acute distress and cardiovascular and respiratory sounds were also normal. Additionally, she was well oriented and her attention, concentration, and memory were all intact. Thus, there were no overt signs of severe pain. (e.g., Ex. 12F/89). The undersigned similarly notes that despite the claimant's testimony that she was experiencing a migraine during the hearing, she did not demonstrate any difficulty attending and responding to questions.

Next, the ALJ turned to whether any of these impairments met any of the medical listings under step three of the Act's analysis. Although the ALJ specifically mentioned only listings 1.04, 2.02, 2.03, 2.04 and 3.03 when conducting this analysis, he also stated:

I have reviewed the medical evidence of record in its entirety and find that when considered individually or in combination, the record does not contain medical findings obtained on clinical examination or special study that are the same as or equal to any of those listed in any subsection of the Listing of Impairments.

Having determined that Plaintiff's impairments did not automatically qualify her for disability benefits, the ALJ proceeded to access her RFC. Relevant to the appeal here is the section of Plaintiff's RFC stating "[t]he claimant must occasionally avoid exposure to bright light and loud noises. The claimant is limited to occupations requiring only occasional near and far acuity, and peripheral acuity, but can avoid ordinary hazards in the workplace, for example boxes on the floor, open doors, etc." In arriving at this RFC, the ALJ found the medical opinions stating that Plaintiff could ambulate normally more persuasive than the physical therapy records and Plaintiff's testimony. Similarly, the ALJ found that Plaintiff's testimony regarding the "intensity, persistence, and limiting effect" of her ailments was inconsistent with the overall record, his own observations during the hearing, and Plaintiff's description of her daily activities. Therefore, he gave Plaintiff's testimony little weight. In contrast, the ALJ found Dr. Brockebrough's opinion

more persuasive than other opinions "as he had access to more of the medical evidence of record and his opinion is more consistent with the other substantial evidence of record."

Based on Plaintiff's RFC, the vocational expert testified that Plaintiff could perform her past relevant work as a buffet server. Therefore, the ALJ determined that Plaintiff was not disabled at step four of the Act's analysis. Plaintiff's request for disability benefits was accordingly denied. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review. Afterward, Plaintiff appealed the ALJ's decision to this Court, asking for reversal of the ALJ's decision and remand for further proceedings.

## II.      Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides that the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.[1] The Court must therefore determine whether the Commissioner's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[3] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is disabled under the Act only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

expected to result in death or to last for a continuous period of at least twelve months."[5]  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]  The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[9]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[10]

After assessing the claimant's RFC, the ALJ continues to steps four and five, which require the ALJ to determine whether the claimant can perform her past relevant work, and if not, then

---

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

whether she can generally perform other work that exists in the national economy.[11]  The claimant bears the burden in steps one through four to prove a disability that prevents the performance of her past relevant work.[12]  The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[13]

### III.    Analysis

Plaintiff contends that the ALJ erred in two ways, necessitating reversal and remand in her case.  First, Plaintiff argues that the ALJ improperly found that her ailments did not equal a listed medical impairment at step three of the Act's analysis.  Second, Plaintiff takes issue with the ALJ's determination of her RFC, arguing that it was not supported by substantial evidence.  In response, Defendants argue that substantial evidence supports the ALJ's decision on all issues.

### A.    Substantial evidence supported the ALJ's finding that none of Plaintiff's medical symptoms met the requirements of or equaled the designated list of impairments.

Plaintiff's first issue on appeal concerns step three of the Act's analysis, namely whether her impairments equal one of the Act's designated list of medical impairments.  It is undisputed that Plaintiff's impairments do not on their own meet the criteria for one of the listings.  Therefore, she must show that her impairments are "equivalent to a listed impairment."[14]  To be equivalent, the plaintiff must show that her impairments are "at least of equal medical significance to the required criteria" for an actual listing.[15]  As stated in SSR 17-2P:

> To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:

---

[11] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

[14] 20 C.F.R. § 404.1526(a).

[15] *Id.* § 404.1526(b)(1)(ii); *see also Lindsay M. v. Kijakazi*, 2022 WL 612452, at *6 (D. Kan. 2022) (categorizing equivalence as "equal in severity and duration" to a listing) (further citations and quotations omitted).

1. A prior administrative medical finding from an [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or

2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

3. A report from the [appeal council]'s medical support staff supporting the medical equivalence finding.[16]

Plaintiff believes the symptoms from her fibromyalgia equal three different SSA listings: peripheral neuropathy (11.14), multiple sclerosis (11.09B), and inflammatory arthritis (14.09D). Furthermore, Plaintiff briefly argues that her headache disorder meets the listings for epilepsy (11.02B or 11.02D).  In attempting to prove medical equivalence, Plaintiff relies upon the listings' elements to show that her symptoms, albeit stemming from different ailments, nevertheless are equal in severity to those under the listing.  The Court will employ the same approach.

As an initial matter, Plaintiff claims that the ALJ did not specifically discuss whether her fibromyalgia or "primary headache disorder" equaled any of the above listings.  This argument is almost identical to that addressed by this Court in *Kelli Lynne S-S. v. Kijakazi*.[17]  There, the plaintiff suffered from fibromyalgia and "complain[ed] the ALJ did not consider any listing that might be medically equaled by Plaintiff's impairments."[18]  The Court responded by noting "the ALJ is not required to articulate in his decision every Listing which might potentially be medically equaled by a claimant's condition or impairments and to explain why it is not medically equaled."[19]  After

---

[16] 2017 WL 3928306.

[17] 2021 WL 4860562 (D. Kan. 2021).

[18] *Id.* at *8 (showing that the plaintiff argued listing her fibromyalgia equaled 14.09D, as argued in this cased as well).

[19] *Id.*

all, "[t]here is no requirement that an ALJ articulate, state or cite, each legal standard which he applies."[20]  Rather, it was clear from the analysis performed by the ALJ that he discussed both fibromyalgia specifically and the underlying medical evidence necessary to find that the plaintiff's fibromyalgia did not equal any medical listing.[21]

In the present case, the ALJ did not explicitly mention and discuss listings 11.02, 11.09, 11.14, and 14.09.  However, like the ALJ in *Kelli Lynne*, the ALJ here found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Contrary to the implication of Plaintiff's argument, the ALJ was not required to specifically discuss each listing which Plaintiff's ailments did not equal.

Furthermore, the ALJ's decision makes clear that he did consider Plaintiff's impairments, including her fibromyalgia and headaches, in determining that they did not equal any medical listing.[22]  This Court will next discuss each of the argued listings in turn, considering the entirety of the ALJ's decision.[23]  Because Plaintiff only mentions that her impairments meet the listing for

---

[20] *Id.* at *7.

[21] *Id.* at *8 ("Contrary to Plaintiff's assertion, the ALJ did address whether fibromyalgia alone or in combination medically equals Listing 14.09D, he specifically found she 'does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.'  Moreover . . . the ALJ discussed Plaintiff's activity report (daily activities), noting 'she was able to care for her children, prepare meals, perform household tasks, drive, prepare meals, [sic] manage finances, and shop.'  He concluded, 'there is nothing in the record to indicate limitations that are more severe than those indicated by the state agency psychologists or Dr. Berg.'  He discussed Plaintiff's ability to interact with others (social functioning) and found only mild limitations.  He discussed Plaintiff's ability to concentrate, persist, or maintain pace and found only moderate limitations.") (citations omitted).

[22] *See id.* at *8 ("Again, the ALJ is not required to articulate in his decision every Listing which might potentially be medically equaled by a claimant's condition or impairments and to explain why it is not medically equaled.  Therefore . . . it was not post hoc rationalization for the Commissioner to explain why Plaintiff's condition does not medically equal the Listing.").

[23] *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("We . . . agree with the Commissioner that an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.").

peripheral neuropathy once without further argument, the Court considers this argument to be forfeited.[24]

1.      Multiple Sclerosis (11.09B)

To have an impairment for multiple sclerosis under 11.09B, a plaintiff must show "[m]arked limitation in physical functioning, and in one of the following: 1. [u]nderstanding, remembering, or applying information; or 2. [i]nteracting with others; or 3. [c]oncentrating, persisting, or maintaining pace; or 4. [a]dapting or managing oneself."[25]   In simple terms, this requires the plaintiff to show both a physical limitation and a mental limitation.[26]

Leaving aside any argument regarding her physical limitations, Plaintiff fails to point to any evidence in the record showing that she has any mental symptoms which could equal the listing here.   In a brief paragraph, Plaintiff claims that she has a "marked limitation in the ability to concentrate, persist, and maintain pace, caused on [sic] her impairments."   Plaintiff provides no support of this contention in her brief.   Courts have no "obligation to search the record and construct a party's arguments."[27]   "The Court accordingly will not undertake any analysis on these conditions because Plaintiff did not brief them."[28]   Therefore, Plaintiff cannot show that she has any impairments equal to 11.09B.   Besides, the ALJ explicitly found that Plaintiff has not more than mild limitations in any area of mental functioning.   Substantial evidence supports this finding,

---

[24] *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or argument.") (further citation and quotations omitted).

[25] 20 C.F.R. Pt. 404, Subpt. P, App'x. 1, 11.09B (citations omitted).

[26] *See, e.g., Guillar v. Comm'r, Soc. Sec. Admin.*, 2020 WL 1026497, at *10 (D. Colo. 2020), *aff'd sub nom. Guillar v. Comm'r, SSA*, 845 F. App'x 715 (10th Cir. 2021) (categorizing latter part of 11.09B listing as "regarding marked limitation in an area of mental functioning").

[27] *Kirkpatrick v. Colvin*, 663 F. App'x. 646, 649 (10th Cir. 2016)

[28] *Moore v. Colvin*, 2016 WL 7034970, at *3 (D. Kan. 2016).

as there simply is not evidence that Plaintiff suffers from more than mild mental limitations. Accordingly, Plaintiff's argument fails on this point.

       2.      Inflammatory arthritis (14.09)

      In contending that her symptoms equal the listing for inflammatory arthritis, Plaintiff cites two separate sections of the listing, 14.09A and 14.09D.  Each will be addressed in turn.

          a.      14.09A

The 14.09A listing requires:

A. Persistent inflammation or persistent deformity of:

1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively; or

2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively.[29]

      Plaintiff argues under 14.09A(1) that she lacks the ability to ambulate effectively because of her sciatica, radiculopathy, and fibromyalgia.  Relying primarily on her own statements about pain in her right leg, her designation as a "high fall risk," and the finding of her physical therapist that she has a "deviated gait," Plaintiff argues the evidence supports overturning the ALJ's decision.  The Court, however, finds that this is merely an argument asking the Court to reweigh the evidence.  As it stands, substantial evidence supports the ALJ's decision that Plaintiff's impairment did not equal this listing.

      In determining that Plaintiff could ambulate effectively, the ALJ relied on Dr. Cullen's opinion that Plaintiff "ambulated without an assistive device with a wide-based gait and stable station" as well as numerous other exams concluding Plaintiff ambulates normally.  Even the

---

[29] 20 C.F.R. Pt. 404, Subpt. P, App'x. 1, 14.09A.

doctor who issued crutches to Plaintiff noted that they were not medically necessary, but Plaintiff wanted to try them anyway.   Tellingly, the physical therapy records Plaintiff relies upon consistently show that Plaintiff continued to ambulate effectively, even if her gait was deviated and she was a high fall risk before therapy commenced.  There are no medical records documenting Plaintiff's fall risk status after physical therapy had begun.   In short, the ALJ found Plaintiff's statements and the physical therapy exams did not alone support finding that Plaintiff could not ambulate effectively, especially in light of the extensive medical record showing that Plaintiff did exactly that.  To hold the opposite, that Plaintiff's own statements regarding her condition and the physical therapy sessions should control the ALJ's decision instead of the record as a whole, would reweigh the evidence.  This, the Court cannot do.

Accordingly, substantial evidence supports the ALJ's holding that Plaintiff could ambulate effectively and had "essentially normal functioning in all extremities without sensory, reflex, or motor deficits, or neurological deficits."  Therefore, the ALJ did not err by holding Plaintiff's did not equal the 14.09A listing.

b.      14.09D

Plaintiff also argues that her fibromyalgia equals the 14.09D listing.  This listing requires a party alleging disability to show:

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) *and* one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.[30]

Putting aside any discussion of Plaintiff's constitutional symptoms, Plaintiff cannot show that substantial evidence did not support the ALJ's decision that she did not meet this listing. As discussed above, Plaintiff fails to cite to any evidence in the record showing that she has a limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. Likewise, Plaintiff does not argue that she has any limitation in maintaining social functioning. Instead, Plaintiff's argument focuses on her alleged inability to perform the activities of daily living due to her impairments, specifically fibromyalgia and her headaches.

Relying on Plaintiff's own testimony, the ALJ found that Plaintiff had "the ability to maintain an extensive range of daily activities, including taking care of her four children, cooking, attending doctors' appointments for herself and her children, shopping, and doing other routine household chores." The ALJ also considered that Plaintiff had worked 15 hours a week as a personal care attendant while performing these daily activities.

Notably, the ALJ did not rely on evidence of Plaintiff's daily activities to prove that Plaintiff was capable of substantial gainful activity *per se*. Rather, the ALJ analyzed this evidence to determine whether her allegations of disabling pain due to her fibromyalgia and headaches were credible.[31] Here, Plaintiff's daily activities are evidence that Plaintiff did not meet any medical listing, especially the one at issue here which explicitly requires "[l]imitation of activities of daily living." In sum, substantial evidence supports the ALJ's finding that Plaintiff did not have a

---

[30] *Id.* at 14.09D (emphasis added).

[31] *See Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) ("When determining the credibility of pain testimony, the ALJ should consider such factors as . . . *the nature of daily activities* . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence.") (emphasis added) (further citation and quotations omitted).

marked limitation in her daily activities.  Accordingly, Plaintiff cannot show that her impairments due to her fibromyalgia and headaches medically equal 14.09D.

   3.  Epilepsy (11.02)

  Finally, Plaintiff briefly contends that her headaches should equal the epilepsy listings under either 11.02B or 11.02D.[32]  A listing under 11.02B requires "[d]yscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment."[33]  The 11.02D listing requires:

> Dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
>
> 1. Physical functioning; or
>
> 2. Understanding, remembering, or applying information; or
>
> 3. Interacting with others; or
>
> 4. Concentrating, persisting, or maintaining pace; or
>
> 5. Adapting or managing oneself.[34]

  Plaintiff points to no medical evidence of the severity of her headaches except her own testimony and the fact that she has "regularly medicated for headaches."  This is not the type of evidence necessary to find medical equivalence under SSR 17-2P, which requires the statement of

---

[32] Plaintiff makes a conclusory argument that the ALJ erred in that he should have SSR 19-4p in analyzing medical equivalence, which has its own factors an ALJ may consider in determining whether headaches medically equal a listing.  However, she makes no effort to show how the ALJ's decision would have turned out differently if the ALJ had explicitly analyzed that standard—besides just arguing that Plaintiff's symptoms equaled the 11.02 listings.  As with Plaintiff's other unbriefed issues, the Court need not address this argument.

[33] 20 C.F.R. Pt. 404, Subpt. P, App'x. 1, 11.02B (further citations omitted).

[34] *Id.* at 11.02D.

a medical consultant, medical expert, or the Appeal Council's medical staff.[35]   Furthermore, the

ALJ explicitly considered Plaintiff's headaches, finding that the evidence showed Plaintiff's

headaches were not severe.  He concluded:

> The exams also do not document any residual neurological or cognitive deficits
> reasonably consistent with the claimant's allegedly severe migraines.  For instance,
> during one visit where the claimant reported that she was having a migraine that
> had lasted for an entire week, the exam indicated that she was not in any acute
> distress and cardiovascular and respiratory sounds were also normal.  Additionally,
> she was well oriented and her attention, concentration, and memory were all intact.
> Thus, there were no overt signs of severe pain. (e.g., Ex. 12F/89).  The undersigned
> similarly notes that *despite the claimant's testimony that she was experiencing a
> migraine during the hearing, she did not demonstrate any difficulty attending and
> responding to questions*.[36]

To reverse the ALJ's decision would require giving greater weight to Plaintiff's subjective

testimony than the medical record and the ALJ's observations—a classic case of reweighing the

evidence.  Because substantial evidence supported the ALJ's findings, the ALJ did not err at step

three in determining that Plaintiff did not meet nor equal any of the medical listings in 20 C.F.R.

Part 404, Subpart P, Appendix 1.

**B.     The ALJ did not err in determining Plaintiff's RFC.**

Plaintiff argues that the ALJ failed to consider two of her ailments in arriving at her RFC:

her migraines and her vision.  When determining a plaintiff's RFC, "the ALJ is not required to

discuss every piece of evidence."[37]   However, "the ALJ also must discuss the uncontroverted

evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[38]

---

[35] *See also* SSR 19-4P, 2019 WL 4169635, at *7 ("We will not establish the existence of an [medically determinable impairment] based only on a diagnosis or a statement of symptoms").

[36] Emphasis added.

[37] *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007).

[38] *Id.* (further citation and quotations omitted).

Here, Plaintiff's arguments fail because the ALJ discussed and considered her migraines, her own testimony regarding her ocular migraines was not sufficiently probative to require discussion, and her RFC is not inconsistent with Plaintiff's own testimony about her black spots.

As discussed above, the ALJ considered her headaches, and substantial evidence supports his finding that these headaches were not as severe as Plaintiff testified.  Nevertheless, the ALJ included in the RFC that Plaintiff "must occasionally avoid exposure to bright light and loud noises" because of her headaches.  Although the ALJ did not include a specific limitation that Plaintiff must be able to take unscheduled breaks to lie down during her migraines, the only evidence of this necessity is Plaintiff's own testimony.[39]  Finding that her testimony was inconsistent with the medical exams and his own observations during the hearing, the ALJ did not err by failing to include this limitation.

Plaintiff also argues that the ALJ failed to consider her ocular migraines, which, according to Plaintiff, occur roughly once a month.  Like her regular migraines, Plaintiff contends that the RFC should have included unscheduled breaks to allow her to recover from her ocular migraines.  However, this argument misses the point.  Substantial evidence supports the ALJ's finding as to Plaintiff's RFC, specifically that the ocular migraines—evidence for which is based solely on Plaintiff's testimony—do not require unscheduled breaks.  Based on the inconsistency of Plaintiff's testimony with the record regarding her migraines and ambulation, the ALJ was justified in determining that her testimony was entitled to little weight.  Therefore, the ALJ did not err by failing to mention Plaintiff's allegedly severe ocular migraines when constructing her RFC

---

[39] *Cf. Wall v. Astrue*, 561 F.3d 1048, 1068 (10th Cir. 2009) ("Claimant also argues the ALJ failed to account for her fatigue. Other than Claimant's subjective complaints, little evidence in the record relates to Claimant's problems sleeping . . . . The scant objective evidence in the record relating to Claimant's sleeplessness or fatigue is not 'significantly probative.'  Thus, the ALJ did not err in declining to specifically discuss this issue.").

because her statements alone were not significantly probative to warrant discussion.  Plaintiff makes no argument to the contrary.[40]  As the medical record contained a lack of any evidence as to the severity of Plaintiff's ocular migraines, substantial evidence supported the ALJ's determination of Plaintiff's RFC regarding that ailment.

Lastly, Plaintiff contends that her RFC did not adequately address her vision issues, namely her alleged black spots and floaters.  However, the record shows that ALJ properly considered Plaintiff's vision problems and included the same in her RFC by limiting Plaintiff to "occupations requiring only occasional near and far acuity, and peripheral acuity, but can avoid ordinary hazards in the workplace, for example boxes on the floor, open doors."  As Plaintiff points out, the ALJ did not explicitly mention Plaintiff's "black spots and floaters."  However, Plaintiff does not show how her RFC is inconsistent with these alleged symptoms.  Once again, it is worth noting that Plaintiff relies solely on her own testimony in arguing against the ALJ's findings.  In fact, the medical opinion by Dr. Brockenbrough, which the ALJ analyzed and considered "more persuasive" than other opinions, found that Plaintiff had no visual limitations whatsoever regarding work she can perform.  Therefore, the ALJ actually gave a more limited RFC than suggested by a persuasive medical opinion.  Accordingly, Plaintiff cannot show that the ALJ erred in assessing her RFC.

---

[40] See *Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 841–42 (10th Cir. 2020) ("And although Trujillo maintains the ALJ was required to discuss the evidence allegedly rejected, she makes no effort to demonstrate that the rejected evidence was 'significantly probative' with respect to the ALJ's RFC determination relating to her ability to use her hands and arms.  Again, we will not develop an argument for her.").

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated this 30th day of November, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE